IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LAURA SMALL, an individual,<br>KATHRYN YONGE, an individual,<br>NATAUSHA HANSON, an individual,<br>KELLY HAY, an individual, KATHERINE<br>BERGMAN-CHAPMAN, an individual,<br>and PEGGY SCHULTZ, an individual,<br><br>       Plaintiffs,<br><br>   v.<br><br>OREGON HEALTH AND SCIENCE<br>UNIVERSITY, an independent public<br>corporation,<br><br>       Defendant. | Case No. 3:23-cv-01290-JR<br><br>FINDINGS AND<br>RECOMMENDATION |

RUSSO, Magistrate Judge:

    Defendant Oregon Health and Science University ("OHSU") moves to dismiss plaintiffs Laura Small, Kathryn Yonge, Natausha Hanson, Kelly Hay, and Peggy Schultz's complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, OHSU's motion should be granted.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

OHSU, an independent public corporation located in Portland, Oregon, employed plaintiffs at various healthcare facilities. This case centers on OHSU's denial of Small, Yonge, Hanson, Hay, Schultz, and Katherine Bergman-Chapman's religious exemption requests surrounding the COVID-19 vaccine.[1]

In August 2021, at the height of the pandemic, Governor Brown sought to limit the spread of the potentially deadly coronavirus in the state's healthcare facilities by issuing an executive order requiring healthcare workers to be vaccinated against COVID-19 by October 18, 2021. *Johnson v. Brown*, 567 F.Supp.3d 1230, 1238 (D. Or. 2021); *see also Johnson v. Brown*, 614 F.Supp.3d 776, 782 (D. Or. 2022) ("[t]he decision to require vaccination among critical populations, such as healthcare workers and providers and education workers and volunteers, is a rational way to further the State's interest in protecting everyone's health and safety during the COVID-19 pandemic"). The rules effectuating Governor Brown's vaccine mandate were promulgated by the Oregon Health Authority. Beginning in summer 2021, in accordance with those rules, OHSU required all of its employees to be vaccinated against COVID-19. Compl. ¶ 4 (doc. 1).

---

[1] OHSU is not moving to dismiss Bergman-Chapman's claim, who relied on the use of aborted fetal cells in the vaccine's development in seeking a religious exception. Def.'s Mot. Dismiss 2 n.1 (doc. 6); *see also Keene v. City & Cnty. of S.F.*, 2023 WL 3451687, *2-3 (9th Cir. May 15, 2023) (reversing the district court's denial of a preliminary injunction premised on a Title VII claim where the plaintiffs – i.e., "Christians who believe in the sanctity of life" – cited the use of fetal cell lines in requesting a religious exception) (citation and internal quotations omitted).

Page 2 – FINDINGS AND RECOMMENDATION

### I. Plaintiff Small

Small was employed "as a pediatric telephone triage nurse for over five years by OHSU." *Id.* at ¶ 6. Before March 2020, she "worked mostly alone in an office" and, after March 2020, "worked entirely remotely from her home office." *Id.*

Small filed a request for religious exception due to her "strongly held Christian beliefs." *Id.* at ¶ 7.

She was also "subjected to a hostile work environment" because "coworkers would make negative and hostile comments towards unvaccinated people in the digital chat at staff meetings." *Id.*

### II. Plaintiff Yonge

Yonge was employed "as a per diem registered nurse for approximately three years by Doernbecher Children's Hospital." *Id.* at ¶ 11. Yonge worked "as a registered nurse since 2001, with direct patient care, and throughout her career was often in direct contact with infectious viruses." *Id.*

Yonge applied for a religious exemption due to her "deeply held Christian religious beliefs." *Id.* at ¶ 12. She "could not obtain any of the COVID-19 vaccines as it created a religious and moral conflict with her beliefs." *Id.*

Yonge was also "subjected to a hostile workplace" because OHSU "had implemented a sticker system for the badges of those employees who were vaccinated"; she was "shocked by the unkind comments she heard from coworkers about the unvaccinated." *Id.* at ¶ 13.

### III. Plaintiff Hanson

Hanson worked "for over four years as a Staff Registered Nurse" at OHSU. *Id.* at ¶ 16.

Page 3 – FINDINGS AND RECOMMENDATION

On September 6, 2021, Hanson sought a religious exemption due to her "deeply held Christian beliefs." *Id.* at ¶ 17.

Hanson was also "subjected to a hostile work environment" because "co-workers, patients and their families made their negative opinions known about those people who were unvaccinated" and "OHSU had implemented a sticker system for those people who were vaccinated," which made her "feel very uncomfortable in her workplace." *Id.* at ¶ 18.

### IV.   Plaintiff Hay

Hay worked "for approximately ten years as a Patient Access Specialist (PAS)." *Id.* at ¶ 20. Hay worked night shifts "for two years during the pandemic." *Id.*

Hay "submitted two applications for a religious exemption to the vaccine." *Id.* at ¶ 21. "She believes that God is her creator and that her body is a temple. Taking the vaccine would go against her moral integrity, believing that God created her body to have a substantial immune system, with proper care." *Id.*

She was "subjected to a hostile work environment [because] there were coworkers and medical staff who made disrespectful and hateful comments about people who were not vaccinated," and she "was asked multiple times to explain her religious views." *Id.* at ¶ 22.

### V.   Plaintiff Shultz

Shultz worked "as a Front-end Processing/Registration clerk for approximately four months." *Id.* at ¶ 27. Shultz worked "entirely remotely" during her time at OHSU. *Id.*

On September 15, 2021, Shultz informed OHSU about her "deeply held religious beliefs that God is her protector." [2] *Id.* at ¶ 28.

---

[2] While OHSU does not distinguish between Shultz and the other plaintiffs, the Court notes that Shultz did not formally apply for a religious exception. Compl. ¶ 28 (doc. 1); *see also* Def.'s Mot.

Page 4 – FINDINGS AND RECOMMENDATION

VI.     **Proceedings Before This Court**

On September 5, 2023, plaintiffs initiated this lawsuit asserting claims for religious discrimination against OHSU under Title VII and Or. Rev. Stat. § 659A.030(1)(a).³ On December 4, 2023, OHSU filed the present motion to dismiss. Briefing was completed in regard to that motion on March 14, 2024.

## STANDARD OF REVIEW

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). For the purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Bacca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

OHSU contends dismissal with prejudice is warranted as to Small, Yonge, Hanson, Hay, and Shultz's claims because they have "failed to allege facts sufficient to show that they held

---

Dismiss 6-8 (doc. 6) (OHSU treating Small, Yonge, Hanson, and Shultz's claims as similarly conclusory).

³ During the conferral process, plaintiffs "agreed to voluntarily dismiss with prejudice the First Claim for Relief asserted in the Complaint alleging violation of ORS 659A.030." Def.'s Mot. Dismiss 2 n.1 (doc. 6). OHSU "is therefore not moving against that claim in the present motion, while reserving all rights and defenses." *Id.*

Page 5 – FINDINGS AND RECOMMENDATION

sincere religious beliefs that conflicted with OHSU's COVID-19 vaccination policy." Def.'s Mot. Dismiss 6 (doc. 6). Specifically, OHSU argues that plaintiffs did not plead facts "demonstrating that their objection to OHSU's vaccination policy stemmed from a bona fide religious belief." *Id.* at 7. Addressing Hay's claim, OHSU asserts that this District has "found similar allegations, centered around bodily integrity" insufficient to state a claim in this context. *Id.* at 10. Finally, OHSU argues plaintiffs' hostile work environment claim neglects to "allege a connection between any alleged harassing conduct and [their] religion," and that the alleged harassment was not "severe or pervasive" enough to establish the requisite elements. *Id.* at 12.

Plaintiffs argue they have met the "fairly minimal" burden of alleging a conflict between religious beliefs and an employer's vaccine mandate. *See* Pls.' Resp. to Mot. Dismiss 5-6, 8 (doc. 20) ("the statements provided by each Plaintiff are substantive assertions that provide sufficient details, underscoring the deeply held religious beliefs at the core of their claims"). Similarly, plaintiffs assert they have plead sufficient facts for a hostile work environment claim because the comments made by their coworkers are "inherently connected to the plaintiffs' religious beliefs." *Id.* at 11.

Plaintiffs further assert the doctrine of equitable estoppel due to OHSU's alleged "failure to conduct a reasonable inquiry into the sincerity or religious nature" of their beliefs. *Id.* at 13. Plaintiffs contend that such an inquiry is mandated by U.S. Equal Employment Opportunity Commission ("EEOC") regulations, such that they would be prejudiced if OHSU was now allowed to challenge their "religious sincerity despite failing to gather additional information." *Id.* at 15.

I.     **Title VII Religious Discrimination Claim**

Title VII makes it unlawful for an employer to discriminate against an individual in the terms and conditions of employment because of religion. To establish a prima facie case for

religious discrimination based on a failure-to-accommodate, the plaintiff must demonstrate that: (1) she "had a bona fide religious belief, the practice of which conflicted with an employment duty"; (2) she "informed [her] employer of the belief and conflict"; and (3) "the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). If the plaintiff "makes out a prima facie failure-to-accommodate case, the burden then shifts to [the defendant] to show that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* (citations and internal quotations omitted).

Concerning the first prima facie element, Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief." *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) (quoting 42 U.S.C. § 2000e-2(a)(1)). Nevertheless, "Title VII does not protect secular preferences." *Id.* at 682.

Specific to COVID-19 vaccination mandates, the EEOC has provided guidance to employers navigating claimed religious exemptions, explaining that, "although Title VII prohibits employment discrimination based on religion, an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not truly religious in nature[.]'" *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021). The EEOC's guidance notes objections that "are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine)" are not protected by Title VII. *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, EEOC (Oct. 25, 2021), *available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-

Page 7 – FINDINGS AND RECOMMENDATION

and-other-eeo-laws#L. "However, overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching." *Id.*

Federal district courts have grappled with the contours of the first prima facie element. Title VII broadly defines religion and "American courts are loath to tell a person that his interpretation of his faith is a wrong one." *Hittle v. City of Stockton*, 2022 WL 616722, *5 (E.D. Cal. Mar. 2, 2022), *aff'd*, 76 F.4th 877 (9th Cir. 2023). At the same time, courts have generally been hesitant to find broad statements of religious opposition sufficient to state a viable claim. *See Bolden-Hardge v. Office of the Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023) (courts are not required to "take plaintiffs' conclusory assertions of violations of their religious beliefs at face value"); *see also Kather v. Asante Health Sys.*, 2023 WL 4865533, *5 (D. Or. July 28, 2023) ("vague expressions of sincerely held Christian beliefs alone cannot serve as a blanket excuse for avoiding all unwanted employment obligations" and a "'threadbare reference' to religious beliefs is insufficient at the motion to dismiss stage").

Here, Small, Yonge, Hanson, Hay, and Schutlz's claims fall into the latter category. To the extent the complaint's allegations invoke their Christian faith, plaintiffs failed to identify any religious tenet or teaching that conflicts with OHSU's policy.[4] *See Rogers v. Neb. Urb. Indian*

---

[4] As denoted herein, Yonge, Hanson, Small, and Shultz's claims rely solely on their "deeply held Christian beliefs." Compl. ¶¶ 12, 16, 28, 7 (doc. 1). Hay additionally identified "that her body is a temple" and taking "the vaccine would go against her moral integrity, believing that God created her body to have a substantial immune system, with proper care." *Id.* at ¶ 21. Thus, although Hay provides some additional context for her claim, there remains insufficient factual information to determine whether a conflict exists, especially because it is unclear from the complaint whether these beliefs were actually communicated to OHSU as part of seeking an exemption. *See Kather*, 2023 WL 4865533 at *5 (allegations "that hint at religious beliefs but do not specify how those beliefs conflict with receiving a COVID-19 vaccine" fail to state a claim); *see also Petermann v. Aspirus, Inc.*, 2023 WL 2662899, *2 (W.D. Wis. Mar. 28, 2023) ("a religious belief that the body is a temple of God is not in itself inconsistent with receiving a vaccine . . . The important question

*Health Coal., Inc.*, 2023 WL 2990720, *5 (D. Neb. Apr. 18, 2023) (dismissing a Title VII claim where the plaintiff did "not articulate or describe any particular beliefs that she maintains [or] provide even a perfunctory explanation as to how her beliefs conflict with receiving a COVID-19 vaccine"); *see also Stephens v. Legacy-GoHealth Urgent Care*, 2023 WL 7612395, *4-6 (D. Or. Oct. 23), *adopted as clarified by* 2023 WL 7623865 (D. Or. Nov. 14, 2023) ("[g]eneral references to Christianity do not meet even a 'fairly minimal' burden at the pleading stage, as such allegations are conclusory and fail to plausibly suggest that a plaintiff's anti-vaccination beliefs are in fact religious"); *DeVito v. Legacy Health*, 2014 WL 687943, *3 (D. Or. Feb. 19, 2024) ("courts appear to be in agreement that a general allegation of religious conflict without identifying a conflicting belief is insufficient to survive a motion to dismiss.").

In sum, judges within this district and throughout the Ninth Circuit hold differing views on how much a plaintiff must plead to assert a bona fide religious belief. Nonetheless, the undersigned is aligned with those courts that are hesitant to find broad statements of religious opposition sufficient to state a viable claim, particularly given that plaintiffs are required to plead more than conclusory allegations that merely recite the elements of a given cause of action. *See Ashcroft*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not adequate). Plaintiffs here simply neglect to provide any details about their religious beliefs – either via the inclusion of well-plead facts or their actual exemption requests. Yet precedent makes clear that "[a]n employee cannot shirk his duties to try to accommodate himself or to cooperate with his employer in reaching an accommodation by a mere

---

[is] whether the employee's belief that the vaccine qualifies as mistreatment is itself based in religion"); *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, *5-6 (W.D. Wis. Mar. 10, 2023) ("personal judgments about vaccine safety [are] not . . . religious reasons . . . the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion").

Page 9 – FINDINGS AND RECOMMENDATION

recalcitrant citation of religious precepts." *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285-86 (8th Cir. 1977).

Stated differently, while plaintiffs are correct that the applicable pleading standard is fairly minimal, the employee nonetheless bears the burden of establishing that "she informed her employer of the [bona fide religious] belief and conflict." *Tiano*, 139 F.3d at 681. OHSU's motion is granted as to Small, Yonge, Hanson, Hay, and Schutlz's religious discrimination claim.

## II.     Title VII Hostile Work Environment Claim

To state a hostile work environment claim, a plaintiff must show: "(1) that he was subjected to verbal or physical conduct of a [religious] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Mills v. PeaceHealth*, 31 F.Supp.3d 1099, 1111 (D. Or. 2014) (citing *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003)). To satisfy the third element, the conduct complained of must be both objectively and subjectively hostile or abusive. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007) (citation and internal quotations omitted).

In making the objective determination, the court evaluates the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (citations and internal quotations omitted). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (citation and internal quotations omitted).

Page 10 – FINDINGS AND RECOMMENDATION

Small, Yonge, Hanson, and Hay all claim to have been "subjected to a hostile work environment" due to negative or unkind "comments towards unvaccinated people," or "about the unvaccinated." Compl. ¶¶ 8, 13, 18, 22 (doc. 1). Hay also alleges that "she was asked multiple times to explain her religious views." *Id.* at ¶ 22.

The complaint thus alleges no connection between the comments about unvaccinated people and plaintiffs' religion. See *Brown v. NW Permanente, P.C.*, 2023 WL 6147178, *6 (D. Or. Sept. 20, 2023) (explaining, in regard to similar hostile work environment claims, that "remain[ing] unvaccinated may be a secular choice, and unvaccinated status alone does not establish any connotation of religious affiliation. Without some connection to their religion, Plaintiffs fail to allege [the first element]"). Further, plaintiffs fail to identify the comments themselves or their frequency, such that the Court cannot determine whether they qualified as severe and pervasive or mere offensive utterances, and whether they unreasonably interfered with plaintiffs' work performance. OHSU's motion is granted as to Small, Yonge, Hanson, and Hay's hostile work environment claim.

**III.     Equitable Estoppel**

In Oregon, to adequately constitute equitable estoppel, "there must be some omission, misconduct, misrepresentation, or fraud by the party against whom the estoppel is asserted." *Id.* (citing *Sec. Sav. & Tr. Co. v. Portland Flour Mills Co.*, 124 Or. 276, 292, 261 P. 432 (1927)).

Contrary to plaintiffs' interpretation of the pleadings, there is no reasonable inference that OHSU, either through act or omission, led plaintiffs to believe that their exemption requests were sufficient. And, via the present motion, OHSU is not questioning whether plaintiffs have bona fide religious beliefs but, rather, whether plaintiffs have adequately alleged that those beliefs "conflict . . . with the COVID-19 vaccine." Pls.' Resp. to Mot. Dismiss 14 (doc. 20); Def.'s Reply to Mot.

Dismiss 11 (doc. 23). Additionally, plaintiffs do not meet the threshold requirements for equitable estoppel because "they do not allege that they relied to their detriment on any intentionally false representation from OHSU." Def.'s Reply to Mot. Dismiss 12 (doc. 23).

Despite the complaint's deficiencies, the Court declines to dismiss Small, Yonge, Hanson, Hay, and Shultz's claims with prejudice. Plaintiffs have not yet had opportunity to address these pleading deficiencies and the Court cannot conclude, at least at this stage in the proceedings, that they are incurable as a matter of law.[5]

## RECOMMENDATION

For the reasons stated herein, OHSU's Motion to Dismiss (doc. 6) should be granted as to Small, Yonge, Hanson, Hay, and Shultz's claims. Any motion to amend the complaint must be filed within 30 days of the District Judge's order.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right

---

[5] To the extent plaintiffs move to amend via their response brief, their request is procedurally improper. Pls.' Resp. to Mot. Dismiss 15-16 (doc. 20); *see also* LR 7-1(b) ("[m]otions may not be combined with any response, reply, or other pleading"); LR 15-1 (any motion to amend "must describe the proposed changes" and include as an exhibit "[a] copy of the proposed amended [that shows] how the amended pleading differs from the operative or superseded pleading").

to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 12th day of April, 2024.

                                           /s/ Jolie A. Russo
                                           Jolie A. Russo
                                United States Magistrate Judge